UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

EDWIN MARQUEZ,

                        Plaintiff,           **MEMORANDUM OF**
                                                         **DECISION AND ORDER**
   -against-                               13-CV-2362 (LDH) (LB)

STARRETT CITY ASSOCIATES AKA
STARRETT CITY, INC. AKA SPRING CREEK,

                        Defendant.
---------------------------------------------------------------X
LASHANN DEARCY HALL, United States District Judge:

Plaintiff Edwin Marquez brings this action against Starrett City AKA Starrett City, Inc. aka Spring Creek ("Starrett City" or "Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendant moves pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), 12(b)(6), and 12(c) to dismiss the complaint in its entirety.

## BACKGROUND[1]

Plaintiff is a self-described "Puerto Rican Latino." (Compl. ¶ 1, ECF No. 1.) In May 1994, Plaintiff was hired to work as a handyman for Starrett City. (*Id.* ¶ 1.) Plaintiff alleges that from December 2009 through July 2012, he was subjected to systemic discrimination and a hostile work environment on the basis of his race and national origin. (*Id.* ¶¶ 1, 46.) Among other things, Plaintiff alleges that, despite his experience and qualification, Defendant denied him a promotion to building superintendent and the right to apply for the position. (*Id.* ¶¶ 4, 22,

---

[1] The following facts are taken from the complaint and are not findings of fact by the Court. They are assumed to be true for the purpose of deciding the instant motion and are construed in the light most favorable to Plaintiff, the non-moving party.

38, 49, 52.) Instead, in addition to his work as a handyman, Starrett City often required Plaintiff to serve as the building superintendent, without additional compensation, on various occasions from approximately May 2004 to May 2011. (*Id.* ¶¶ 1, 4.) According to the complaint, Plaintiff's supervisors, Orlando Palmeri and Vincent Oppedisano, told Plaintiff and other employees of Latino descent that "they were not as good as the Italian employees and would never be promoted to the position of superintendent because they were not Italians." (*Id.* ¶¶ 1, 35.) The supervisors are also alleged to have told Latino employees "that they would not be entitled to the same privileges as their Italian co-workers." (*Id.* ¶ 35.) To that end, Plaintiff alleges that, unlike his Italian counterparts, he and other Latino employees were denied overtime work. (*Id.* ¶ 23.) Likewise, Plaintiff and other Latino employees were informed that they could not take breaks, while employees of Italian descent were able to do so. (*Id.* ¶ 35.) In addition, Plaintiff maintains the he was consistently subjected to disciplinary review without just cause. (*Id.* ¶ 55.) According to the complaint, Oppedisano and Palmeri regularly advised Plaintiff that his work was unsatisfactory notwithstanding reports by tenants and co-workers to the contrary. (*Id.* ¶ 1.) Plaintiff further complains that he was repeatedly and wrongfully suspended from his position as a handyman. (*Id.* ¶¶ 1, 49.)

Plaintiff alleges, moreover, that Defendant engaged in acts of discrimination based on his alleged disability. Plaintiff suffers from chronic ulcers and gallstones, the treatment for which requires regular medical attention, including hospitalization. (*Id.* ¶ 55.) According to the complaint, Defendant consistently denied Plaintiff time off of work for hospital appointments and surgeries and did not permit Plaintiff to use sick leave for surgery preparation. (*Id.*) Additionally, Palmeri and Oppedisano often marked Plaintiff absent without good cause when

2

Plaintiff was in the hospital for surgery or for problems related to his medical conditions, even after Plaintiff provided advance notice of his absences.  (*Id.* ¶ 46.)

Plaintiff maintains that, on several occasions, he informed Defendant's Human Resources Department that he was being subjected to discrimination.  (*Id.* ¶ 5.)  Then, in November 2010, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶¶ 5, 75.)  Plaintiff was subsequently suspended for five days on both April 6, 2011, and May 30, 2012, and suspended indefinitely on June 4, 2012.  (*Id.* ¶¶ 49, 56, 91.)  Plaintiff was later discharged without just cause.  (*Id.* ¶ 49.)  Plaintiff filed an EEOC charge against Starrett City Associates/Starrett City Corp. on June 6, 2012.  (EEOC Charge No. 520-2012-02784 ("EEOC Charge").)  In his EEOC Charge, Plaintiff checked the boxes for discrimination based on "national origin," "disability," and "retaliation" pursuant to Title VII and the ADA.  (*Id*.)  On January 16, 2013, the EEOC issued a right to sue letter.  (*See* Notice of Right to Sue, Jan.16, 2013.)  On April 18, 2013, Plaintiff instituted the instant action asserting claims for discriminatory treatment, hostile work environment, and retaliation.  (*See* Compl.).

## DISCUSSION

### I. Personal Jurisdiction

Defendant seeks dismissal of this action on the basis of a defective summons.  Defendant casts this aspect of its motion as being made pursuant to Federal Rule of Civil Procedure 4. (Def.'s Mem. 1-6, ECF No. 32-1.)  Because failure to comply with the requirements of Rule 4 goes to whether the Court has personal jurisdiction over Defendant, the Court construes this challenge as a motion pursuant to Rules 12(b)(2) and 12(b)(4).  *See Howell v. Campbell*, No. 15 CIV. 3705 (RWS), 2016 WL 1241529, at *1-2 (S.D.N.Y. Mar. 23, 2016) (assessing challenges to sufficiency of process and personal jurisdiction together); *GMAC Mortg. Corp. of PA v.*

3

*Weisman*, No. 95 CIV. 9869(JFK), 1997 WL 83416, at *2 (S.D.N.Y. Feb. 27, 1997) (same); *Macaluso v. New York State Dep't of Envtl. Conservation,* 115 F.R.D. 16, 18 (E.D.N.Y. 1986) (service of a defective summons that was not accompanied by a copy of the complaint was insufficient to establish jurisdiction over the defendant).

In opposing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 44-45 (2d Cir. 2016) (quoting *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)).  That is, "[a plaintiff] must show that [the defendant] has minimum contacts with the forum state and was properly served." *Howell,* 2016 WL 1241529, at *2 (quoting *Salmassi e. Kfr. v. Euro-America Container Line Ltd.*, 08 Civ. 4892, 2010 WL 2194827, at *4 (S.D.N.Y. June 1, 2010)).

Related to the summons, which must be served on a defendant, a motion brought pursuant to Rule 12(b)(4) "challenge[s] noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons."  *Swanson v. City of New York,* No. 16-CV-3231 (MKB), 2017 WL 3130322, at *3 n.4 (E.D.N.Y. July 21, 2017) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2004)).  Rule 4 sets forth the form a summons must take and the procedure for service.  *See* Fed. R. Civ. P. 4.  This rule requires, in part, that a summons "name. . . the parties" and "be directed to the defendant."  Fed. R. Civ. P. 4(a)(1)(A)-(B).  Put simply, to be compliant with Rule 4, the correct name of the defendant must appear on the summons.

Here, the summons names and is directed to a single defendant:  Starrett City Associates. (*See* Summons, ECF No. 3 (listing the Defendant as "Starrett City Associates AKA Starrett City,

4

Inc. AKA Spring Creek").); *see also* Black's Law Dictionary (10th ed. 2014) (defining "a.k.a." as an "also known as"). Defendant argues, and Plaintiff does not dispute, that Starrett City Associates and Starrett City, Inc. are separate entities. (*See generally* Pl.'s Opp., ECF No. 39; Def.'s Mem. 2-4.) Similarly, Plaintiff also does not dispute that Starrett City, Inc., as opposed to Starrett City Associates, was his employer. (*See* Pl.'s Opp.; Def.'s Mem. 3.) Plaintiff did not direct the summons to the proper defendant.

A failure to properly name the defendant need not be fatal. Of course, every effort should be made to comply with the form of summons requirements stated in Rule 4(a). However, technical errors that are neither misleading nor prejudicial can be cured through an amendment, the right to which should be liberally granted. *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1088 (4th ed. 2013) (stating leave to amend technical errors in summons should be liberally granted); *see also Doe v. Constant*, 354 F. App'x 543, 546 (2d Cir. 2009) (quoting *Grammenos v. Lemos,* 457 F.2d 1067, 1070 (2d Cir.1972)) ("Rule 4(a)(1)(B) of the Federal Rules of Civil Procedure provides only that a summons 'be directed to the defendant,' and this rule is 'to be liberally construed, to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice'"); *Time Prods. v. J. Tiras Classic Handbags, Inc.*, No. 93 CIV. 7856 (CSH), 1994 WL 363930, at *4 (S.D.N.Y. July 13, 1994) ("Courts liberally construe the process requirements under Rule 4[ ]. As long as the summons is sufficiently accurate to give proper notice, the error will be deemed harmless and the party will be allowed to amend the summons."). It appears that the defect in the summons here resulted from a simple mistake that was technical in nature and not misleading. Indeed,

Defendant has not identified any prejudice resulting from Plaintiff's error. And, the Court sees none. As such, amendment is appropriate.[2]

## II. Failure to State a Claim

Defendant argues that even if the Court exercises jurisdiction over Defendant, it should nonetheless dismiss Plaintiff's disability and racial discrimination claims because the complaint is untimely and the claims therein are insufficiently pleaded. (Def.'s Mem. 4-10.) A motion to dismiss based on a statute of limitations defense "is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." *Frederick v. Jetblue Airways Corp.*, No. 14-CV-7238(DLI)(RER), 2016 WL 1306535, at *4 (E.D.N.Y. Mar. 31, 2016), *aff'd*, 671 F. App'x 831 (2d Cir. 2016); *see also Manley v. New York City Police Dep't*, No. CV-05-679(FBLB), 2005 WL 2664220, at *1 (E.D.N.Y. Oct. 19, 2005) (defendant moved to dismiss the plaintiff's Title VII and ADA claims as untimely pursuant to Rule 12(b)(6)).[3] Generally, to survive a motion to dismiss for failure to state a claim, a plaintiff need only plead facts sufficient to render his claims facially plausible. *Littlejohn v. City of New York*, 795 F.3d 297, 310-311 (2d Cir. 2015). While facial plausibility requires more than a "sheer possibility" of a defendant's liability, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), "[i]t is not the Court's function to weigh

---

[2] To the extent Defendant contends that the Court lacks subject matter jurisdiction because "Starrett City Corp" as opposed to Starrett City Inc. was named in the right to sue letter, the Court disagrees. A search of "Starrett City Corp" on the Department of State, Division of Corporations, State Records & UCC, reveals that no such corporation exists in this state. In any event, it is apparent that Plaintiff attempted to name Starrett City, Inc. as the defendant in both his EEOC Charge and this action. *See McDougal v. State Univ. of N.Y. Downstate Med. Ctr., Long Island Coll. Hosp.*, No. 12 Civ. 2018 (ILG) (MDG), 2013 WL 1437616, at *3 (E.D.N.Y. Apr. 9, 2013) (finding the court had subject matter jurisdiction where "[i]t [wa]s apparent that the defendants named in the [New York State Division of Human Rights] complaint and in this action [were] one and the same, albeit both times named imprecisely").

[3] Defendant casts its argument for dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. However, consistent with courts in this circuit, the Court analyzes Defendant's challenge to the timeliness of Plaintiff's Title VII and ADA claims under Rule 12(b)(6).

the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999)). The issue before the court on a motion to dismiss is not whether a claim is likely to prevail. *Id.* Rather, the court must only decide whether a plaintiff should have the opportunity to offer evidence in support of his claims. *Id.* (citing *Villager Pond Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808 (1996)). In making this determination, the Court must accept all factual allegations in the complaint as true.[4] *Id.*

Moreover, in cases where the plaintiff is proceeding pro se, his pleading typically must be construed liberally and interpreted to raise the strongest arguments that it suggests. *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013). That is, a pro se complaint "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam)). In this case, although Plaintiff is currently proceeding pro se, he was represented at the time the complaint was filed.[5] Because the complaint was drafted by a

---

[4] "The test for evaluating a [motion for judgment on the pleadings] is the same as that applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6)." *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005) (quoting *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998)). A Rule 12(c) motion, however, occurs after the close of pleadings. *See* Fed. R. Civ. P. 12(c). Notably, Rule 12(c) is inapplicable here because Defendant has not yet filed an answer in this action. *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 94 n.1 (E.D.N.Y. 2004) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (1990)) (finding "inasmuch as 'defendant may not move under Rule 12(c) until after he has answered' . . . Rule 12(c) appears to be inapplicable"); *Grodzian v. Comput. Credit, Inc.*, No. 08-CV-2286(JS)(WDW), 2009 WL 6497843, at *2 (E.D.N.Y. Mar. 31, 2009) (finding that a motion for a judgment on the pleadings was premature because the defendant had not filed an answer, and the pleadings therefore were not closed). Accordingly, Defendant's motion pursuant to Rule 12(c) is dismissed as premature.

[5] Plaintiff was initially represented by counsel when he filed his complaint on April 18, 2013. (*See* Compl.) Plaintiff's counsel was subsequently disbarred on October 11, 2016, and the Court terminated her as counsel of record in this case on October 14, 2016. (*See* Oct. 14, 2016 Order.) The Court stayed the case for sixty days to afford Plaintiff an opportunity to obtain new counsel. (*Id.*) On March 23, 2017, Plaintiff filed an opposition to Defendant's motion to dismiss pro se. (*See* Pl.'s Aff. in Support of Opp., ECF No. 39.)

lawyer, it is not entitled to the generous reading given to pro se complaints. Conversely, the Court will liberally construe Plaintiff's opposition to Defendant's motion, as it was not drafted by counsel. *Winter v. Pinkins,* No. 14-CV-8817(RJS), 2016 WL 1023319, at *4 (S.D.N.Y. Mar. 8, 2016) (liberally construing only plaintiff's opposition to defendants' motion to dismiss because plaintiff's complaint "was filed with the assistance of counsel").

### A. Statute of Limitations

It is well established that under Title VII and the ADA, a claim must be filed in federal court within ninety days of the plaintiff's receipt of a right to sue letter from the EEOC. *Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010) (summary order); 42 U.S.C. § 2000e-5(f)(1). This requirement is treated as a statute of limitations, rather than a jurisdictional prerequisite. *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)) (noting the Supreme Court's "policy of treating Title VII time limits not as jurisdictional predicates, but as limitations periods subject to equitable tolling").

In this action, Plaintiff was issued a right to sue letter as to "Starrett City Associates/Starrett City Corp" on January 16, 2013, of which the Court takes judicial notice. (EEOC Charge.)[6] "There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice" and that "a mailed document is received three days after

---

[6] In response to a November 4, 2013 court order directing Plaintiff to file proof of service and the right to sue letter related to this case, and in Plaintiff's reply to Defendant's letter motion for a pre-motion conference, Plaintiff filed the signature page of a different EEOC complaint and a right to sue letter related to his Grenadier Realty Corp. EEOC charge. (ECF No. 8; ECF No. 10.) However, in response to a November 7, 2013 court order directing Plaintiff to file the EEOC documents related to the instant matter, Plaintiff submitted a file containing a right to sue letter for Starrett City Associates/Starrett City, Corp. and the underlying EEOC charge. Accordingly, to the extent Defendant contends that dismissal is warranted because Plaintiff submitted the wrong EEOC filings and right to sue letter, this argument fails.

its mailing." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). It is presumed, therefore, that Plaintiff received the right to sue notice on January 19, 2013. Accordingly, Plaintiff's deadline to file his action in federal court was April 19, 2013. Having filed his complaint on April 18, 2013, Plaintiff's Title VII and ADA claims are timely. *See, e.g.*, *Tinsley v. Town of Brookhaven Dep't of Pub. Safety*, No. 14-cv-7277, 2017 WL 744570, at *4 (E.D.N.Y. Feb. 24, 2017) (denying motion to dismiss Title VII and ADA claims for lack of subject matter jurisdiction where the court presumed that the plaintiff received her right to sue notice three days after the date the letter was issued and plaintiff filed her complaint within the requisite ninety-day period).

In an effort to persuade the Court that Plaintiff's complaint is untimely, Defendant directs the Court to a number of previously filed EEOC charges and federal complaints lodged by Plaintiff against Grenadier Realty Corporation (hereinafter "Grenadier"). (Def.'s Mem. at 5-6.) Defendant maintains that Grenadier is the managing agent for the housing complex at which Plaintiff worked, but that Grenadier was not Plaintiff's employer. (*Id*. at 3.) Defendant further argues that each of these previous actions is either identical or substantially similar to the allegations in the instant action. (*Id*. at 5-6.) Finally, Defendant notes that each of these prior actions was dismissed either voluntarily by Plaintiff or by order of the Court. (*Id*.) This all may very well be true. Defendant fails, however, to explain how these prior actions, which were admittedly pending against a distinct legal entity, have any bearing on the instant action. Defendant certainly fails to provide a basis for disturbing the Court's finding that the complaint in this action is timely.

### B. Disability Discrimination Claims

To state a claim under the ADA, a plaintiff must allege facts "to show that h[is] employer took adverse action against h[im], and that the action was taken because of h[is] disability or perceived disability." *Lebowitz v. N.Y. City Dep't of Educ.*, No. 15-cv-2890, 15-cv-5548 (LDH) (ST), 2017 WL 1232472, at *9 (E.D.N.Y. Mar. 31, 2017). The threshold inquiry in any ADA claim is whether the plaintiff has alleged that he suffers from a "disability" as defined by the statute. That is, the court must determine whether the plaintiff has alleged that he suffers, or suffered, from an impairment that substantially limits one or more major life activities. *Broderick v. Research Found. of State Univ. of N.Y.*, No. 10-CV-3612 (JS) (ETB), 2010 WL 3173832, at *2 (E.D.N.Y. Aug. 11, 2010). In this case, the answer is no. Plaintiff alleges only that he "had chronic ulcers and gallstones." (Compl. ¶ 55.) He does not include allegations from which the Court could glean which, if any, major life activity is substantially limited by these conditions. *See Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015) (finding plaintiff failed to plead a prima facie case of discrimination under the ADA where plaintiff identified her alleged disability of severe tendonitis but failed to "explain what 'major life activity' is 'substantially limited'"). Absent any such allegations, a claim under the ADA cannot persist and must be dismissed.

The standard for pleading a claim for disability discrimination under the NYSHRL and the NYCHRL is virtually identical to the ADA. *Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 WL 5561209, at *16, 18 (E.D.N.Y. Sept. 21, 2015) (articulating pleading standard under ADA and applying same to NYSHRL and NYCHRL claims), *aff'd,* 652 F. App'x 44 (2d Cir. 2016); *Broderick*, 2010 WL 3173832, at *2 (assessing claims brought under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL and stating that "[r]egardless of the statute

sued under, the same standards apply"). As an exception, the NYSHRL and NYCHRL have a broader definition of "disability" and do not require a showing that the alleged disability substantially limits a major life activity. *Thomson*, 2015 WL 5561209, at *18 (quoting *Reilly v. Revlon, Inc.,* 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009)). Still, Plaintiff fails to meet the pleading requirements necessary to maintain a cause of action under either the NYSHRL or NYCHRL.

Specifically, Plaintiff fails to allege facts connecting any alleged adverse action to his disability or perceived disability. The complaint is replete with allegations that Plaintiff was: (1) denied time off for hospital appointments and surgeries; (2) denied the right to use sick leave; (3) denied a promotion and the right to apply to become a superintendent; and (4) subjected to disciplinary review without just cause, among other things. (Compl. ¶ 55.) Fatally, there is nothing in the complaint to support an inference that these employment actions were motivated by Plaintiff's disability or perceived disability. For example, there are no allegations that supervisors made comments regarding Plaintiff's disability, changed Plaintiff's responsibilities based on his alleged disability, or took any other action based on Plaintiff's alleged disability. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) (finding plaintiff sufficiently pleaded causation to state a claim for discrimination under the ADA where she alleged that "just days after returning to work following [her] injury, the Defendant modified her job responsibilities, requiring her to perform certain labor intensive tasks outside the scope of her job classification"); *Bernadotte v. New York Hosp. Med. Ctr. of Queens*, No. 13-CV-965 MKB, 2014 WL 808013, at *8 (E.D.N.Y. Feb. 28, 2014) (finding plaintiff alleged facts sufficient to draw inference of discrimination where she alleged that her "supervisor harbored dissatisfaction at Plaintiff for taking medical leave and used Plaintiff's attendance at the

nursing program as an excuse for executing Plaintiff's unlawful termination"); *Ridgway v. Metro. Museum of Art*, No. 06 CIV. 5055 SAS, 2007 WL 1098737, at *4 (S.D.N.Y. Apr. 10, 2007) (finding plaintiff alleged a causal connection between the adverse employment action and disability where defendant prohibited him from returning to work without restriction and then terminated plaintiff when the doctor stated that plaintiff could only work a half day). Accordingly, Plaintiff's disability discrimination claims do not survive a motion to dismiss for failure to state a claim. *Jackson v. Elmhurst Hosp. Ctr.*, No. 10-CV-5248 (RRM) (RER), 2012 WL 868965, at *7 (E.D.N.Y. Mar. 14, 2012) (dismissing discrimination claims where the plaintiff "offer[ed] virtually no connection between any disability and her 'comp time' or leave time denial, her attempt to take a sick day . . . and her self-described 'termination'"); *Thomson*, 2015 WL 5561209, at *16 (dismissing disability discrimination claims where the plaintiff "failed to present any allegations that would give rise to the inference that her alleged disability or perceived disability played a motivating role").

### C. National Origin/Race Discrimination and Disparate Treatment Claim

To establish a claim of discrimination based on race or national origin under Title VII, a claimant must show that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference that the employer acted with discriminatory intent. *Littlejohn*, 795 F.3d at 307. Significantly, at the motion to dismiss stage, a plaintiff need not allege facts that satisfy every element of a Title VII claim. Rather, a plaintiff need only plead facts plausibly alleging that the employer took an adverse action against him at least, in part, for a discriminatory reason. *Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (summary order) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84

(2d Cir. 2015)) ("To survive a motion to dismiss, a Title VII plaintiff does not have to plead a full prima facie case pursuant to the first stage of the burden-shifting framework outlined in [*McDonnell Douglas Corp.*]; []he 'need only give plausible support to a minimal inference of discriminatory motivation.'").

In this case, Defendant does not challenge that Plaintiff has sufficiently pleaded the first three elements in a discrimination claim. Plaintiff has indeed alleged that he belongs to a protected class as a "Puerto Rican Latino" (Compl. ¶ 1); he was qualified for his position (*Id.* ¶¶ 3, 5); and he suffered an adverse employment action, including the denial of overtime, and other benefits, suspensions, and termination (*Id.* ¶¶ 1, 14). *Herling v. N.Y. City Dep't of Educ.*, No. 13-CV-5287, 2014 WL 1621966, at *6 (E.D.N.Y. Apr. 23, 2014) ("Denying an employee the opportunity to work overtime, comp time, or additional per-session employment may also constitute an adverse employment action."). Defendant maintains, however, that Plaintiff fails to plead facts demonstrating an inference of discrimination. The Court disagrees.

At the pleading stage, a plaintiff may prove discriminatory motive either directly, by alleging facts that show an intent to discriminate, or indirectly, by alleging circumstances that give rise to a plausible inference of discrimination. *Vega,* 801 F.3d at 87 (stating standard for proving an adverse employment decision was motivated, at least in part, by an impermissible reason). In alleging a discriminatory motive indirectly, a plaintiff raises a prima facie inference of discrimination when he demonstrates that his employer treated him less favorably than similarly situated employees outside of his protected class. *Palmer v. Shchegol*, No. 14-CV-04406 (LDH) (MDG), 2016 WL 5678544, at *4 (E.D.N.Y. Sept. 30, 2016) (citing *Littlejohn*, 795 F.3d at 312). When relying on evidence of disparate treatment, a plaintiff must show he was "similarly situated in all material respects to the individuals with whom [ ]he seeks to compare

13

[him]self." *Id*. (quoting *Mandell v. County of Suffolk & John Gallagher*, 316 F.3d 368, 379 (2d Cir. 2003)).

Here, Plaintiff has arguably satisfied both standards. Regarding direct evidence of an intent to discriminate, Plaintiff alleges that his supervisors told him and other employees of Latino descent that "they were not as good as the Italian employees and would never be promoted to the position of superintendent because they were not Italians" and "that they would not be entitled to the same privileges as their Italian co-workers." (Compl. ¶¶ 1, 35.); *see also Rose v. New York City Bd. of Educ.,* 257 F.3d 156, 162 (2d Cir. 2001) (holding that alleged remarks by plaintiff's "immediate supervisor, who had enormous influence in the decision-making process" were direct evidence of discriminatory animus). As for indirect evidence of discriminatory intent, Plaintiff alleges that he and other Latino employees were denied overtime work and could not take breaks, even though employees of Italian descent were able to do so. (Compl. ¶¶ 24, 35.). These allegations are sufficient at this stage. *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014) ("Although the Complaint is sparse on specifics with respect to how his colleagues are similarly situated to him, the Court finds that Plaintiff has stated a plausible inference of discrimination based on disparate treatment with respect to the claims that [the defendant] treated him differently by denying him the opportunity to earn additional compensation and by assigning him significantly more work than his fellow hall directors, but just barely.").

Notably, Defendant points to affidavits to support an argument that Defendant's actions were nondiscriminatory in light of Plaintiff's conduct. (Def.'s Mem. 8.) Defendant is reminded, however, that at the motion to dismiss stage, the Court may only consider the facts alleged in the complaint, attached to or incorporated by referenced therein, or provided in documents of which

14

the Court may take judicial notice.  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  The affidavits do not fall into these categories, and are, therefore, disregarded.

### D.  Retaliation Under the ADA, Title VII, NYSHRL, and NYCHRL

Defendant does not explicitly move to dismiss Plaintiff's retaliation claim.  However, the right to amend a pleading should only be granted where an amended pleading could withstand a motion to dismiss and thus would not be futile.  *Chung v. City Univ. of New York*, 605 F. App'x 20, 21 (2d Cir. 2015) (summary order) ("An amendment is futile if the proposed pleading would not survive a Rule 12(b)(6) motion to dismiss.").  Plaintiff's retaliation claim does not meet this bar.  To establish a prima facie claim of retaliation under the ADA, Title VII, NYSHRL, and NYCHRL a plaintiff must show:  (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Sarno Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *see also Muktadir v. Bevacco Inc.*, No. 12-CV-2184 (FB) (RER), 2013 WL 4095411, at *3 (E.D.N.Y. Aug. 13, 2013) (applying same standard for retaliation under Title VII, NYSHRL, and NYCHRL).  Where the plaintiff fails to plead a direct link between a grievance and retaliatory action, the plaintiff can demonstrate a causal connection "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct."  *Littlejohn*, 795 F.3d at 319.

Here, Plaintiff alleges that he filed an initial complaint of discrimination with the EEOC in November 2010 and "apprise[d] the Defendant's Human Resources Department on several occasions that he was being subjected to [discrimination] . . . ."  (Compl. ¶ 5.)  This conduct

constitutes protected activity. *Muktadir*, 2013 WL 4095411, at *3 (finding plaintiff satisfied the first element of a retaliation claim where "he filed numerous internal complaints . . . as well as an external charge of discrimination with the EEOC"). Plaintiff further alleges that "he was subjected to false accusations of failing to perform for five consecutive days in 2011, as a result of his filing a national origin complaint with the Defendant's Human Resources department and the US EEOC." (Compl. ¶ 75.) Plaintiff maintains further that he was subsequently suspended without cause. (*Id.* ¶¶ 40, 56, 91 (stating that Plaintiff was suspended without just cause or prior written notice.)) Plaintiff fails, however, to allege a causal connection between his complaints and suspension and the alleged false accusations made against him.

Plaintiff does not provide specific dates on which he filed his complaints with the Human Resources Department, but he makes clear that he submitted them prior to filing a charge with the EEOC in November 2010. (*Id.* ¶ 5.) Plaintiff was not suspended until April 2011—five months after filing his EEOC claim. (*Id.* ¶¶ 40, 56, 91.) Plaintiff's suspension is temporally too remote from the filing of his Human Resources and EEOC complaints to support a claim for retaliation. "[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Moore v. Verizon*, No. 13-cv-6467 (RJS), 2016 WL 825001, at *15 (S.D.N.Y. Feb. 5, 2016) (quoting *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F.Supp.2d 257, 275 (S.D.N.Y.2007) (listing cases where courts have found even two- to three-month gaps between the protected activity and adverse employment action insufficient to support an inference of causation). Moreover, the complaint is devoid of allegations of disparate

16

treatment of other employees who engaged in similar conduct. Thus, Plaintiff has not stated a claim for retaliation and any effort to do so would be futile.[7]

## CONCLUSION

For the foregoing reasons, Starrett City Associates is dismissed from this action. Plaintiff's claim for retaliation pursuant the ADA, Title VII, NYSHRL, and NYCHRL are dismissed with prejudice, and Plaintiff is granted leave to amend the summons and complaint as to the correct defendant, Starrett City, Inc. Plaintiff shall file an amended complaint within thirty (30) days from the date of entry of this order. Plaintiff should include additional supporting allegations addressing the deficiencies raised herein. The amended complaint must be captioned as an "Amended Complaint," and include the same docket number as this order. Plaintiff is advised that an amended complaint, once filed, replaces the original complaint. Therefore, Plaintiff must include in the amended complaint all the necessary information contained in the original complaint and provide additional factual allegations to address the deficiencies of the

---

[7] The Court believes that Plaintiff's allegations with respect to a hostile work environment may also be susceptible to dismissal. In particular, the Court notes that Plaintiff's allegations do not seem to rise to the level of severity typically found in hostile work environment claims. *Cf. Castagna v. Luceno*, 558 F. App'x 19, 21 (2d Cir. 2014) (finding that "evidence of physical threats is highly probative of the severity of the alleged hostile work environment"); *Muktadir*, , 2013 WL 4095411, at *2 (finding plaintiff stated a hostile work environment claim where he alleged that his managers and co-workers made "insulting remarks about his Bangladeshi descent" on a daily basis, engaged in "offensive physical actions including sniffing [plaintiff] and comment[ed] that he smelled so that [sic] bad customers in the restaurant would be unable to eat," served plaintiff "only pork-based foods and prohibit[ed] him from preparing his own food or obtaining outside food," even though defendants were aware of his dietary restrictions); *Ewing v. Coca Cola Bottling Co. of New York*, No. 00 CIV. 7020 (CM), 2001 WL 767070, at *7 (S.D.N.Y. June 25, 2001) (denying motion to dismiss hostile work environment claim where plaintiffs alleged that supervisors regularly referred to minority employees using racial slurs, a plaintiff was referred to as "Monkey Marcus," another plaintiff was referred to as a "stupid motherfucker" and "killer," and supervisors made comments such as "when was he going to rob a bank" and "What's up hoodlum"). Plaintiff does not allege conduct, such as the use of racial slurs, threats of physical violence, or subjection to humiliation that, if pervasive enough, may be sufficient to state a claim. That said, the Court is unprepared at this juncture to find that Plaintiff can provide no set of facts in support of an amended claim, and notes that Defendant made no arguments in support of any motion to dismiss this claim.

original complaint. Plaintiff's failure to amend the complaint in a timely fashion will result in the dismissal of Plaintiff's case with prejudice for failure to prosecute.

                                                  SO ORDERED:

                                                    /s/LDH
                                              LaSHANN DeARCY HALL
                                              United States District Judge

Dated: Brooklyn, New York
       September 30, 2017